IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

PLANET TECHNOLOGIES, INC.,
           *
  Plaintiff,
           *
  v.                Civil Action No. AW-10-00149
           *
PLANIT TECHNOLOGY GROUP, LLC, *et al.*,
           *
  Defendants.
         ******

## MEMORANDUM OPINION

  Pending before the Court is Defendant Casey Robinson's Motion to Dismiss (Doc. No. 15) Plaintiff's trademark infringement and unfair competition claims under the Lanham Act, 15 U.S.C. § 1501 (2006), pursuant to Federal Rules of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and (12)(b)(6), for failure to state a cognizable claim. The Court has reviewed the parties' motion and all supporting documents and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons articulated below, the Court DENIES Defendant's Motion to Dismiss.

## FACTS

  Plaintiff, Planet Technologies, Inc., is a Delaware Corporation with its principal place of business in Germantown, Maryland and provides "business consulting and management services in the field of business and computer network management services . . . ." (Compl. ¶ 12.) Plaintiff alleges that it has used the service name, PLANET TECHNOLOGIES, and a "Logo Mark" in connection with its business in the State of Maryland continuously from October 31, 1997, and in interstate commerce since March 31, 1998. Plaintiff registered its service mark, PLANET TECHNOLOGIES, with the United States Patent and Trademark Office on October 23, 2007. Plaintiff represents that it has a stellar reputation and achieved the status of Microsoft

Gold Certified Partner, which is the "highest partnership level with Microsoft," for a number of years before Defendant began providing competing services under a similar trademark. (Compl. ¶ 15.) Plaintiff alleges that Microsoft refers its customers to Plaintiff when they are "looking for a company to assist them in determining Microsoft solutions . . . ." (*Id.* at ¶ 16.) Plaintiff represents that it provides its services to "customers in Maryland and throughout the world." (*Id.* at ¶ 21.)

Defendant Robinson Casey ("Casey") is a resident of the Commonwealth of Virginia and represented by affidavit that he is the Chief Executive Officer of Plaint Group, Inc. ("PGI"), which is a corporation organized under the laws of Virginia. According to Defendant Casey, PGI owns a 100% capital interest and 74.1% profit interest in Defendant Planit Technology Group, LLC ("PTG"); however, Defendant Casey contends that he is not the Chief Executive Officer of PTG. Plaintiff's Complaint alleges that PTG is a Virginia limited liability company, and represented in its opposition to Defendant's motion that PTG has an office in the State of Maryland, which is located less than five miles from Plaintiff's office. Plaintiff further asserts that PTG began providing competing computer services in 2008 using a service mark that is confusingly similar to Plaintiff's service mark. Additionally, Plaintiff alleges that Defendant Casey "personally participated in selecting the name PLAINT TECHNOLOGY GROUP for use in connection with certain computer services," directed PTG to provide competing computer services, "directly controls the service mark PLANIT TECHNOLOGY GROUP and its Logo" and "directed PTG counsel to file for a federal trademark registration." (Compl. ¶¶ 26, 27, 31, 34.) PTG registered its service name on March 10, 2009, with the United States Patent and Trademark Office.

According to Plaintiff, Defendants either had actual or constructive knowledge of Plaintiff's service mark and Logo Mark when they began to provide competing services through "[Plaintiff's website] or through normal industry channels," such as "trade shows [and] trade publications." (Compl. ¶ 29.) Plaintiff contends that it and Defendants promote their services at the same computer trade shows and alleges that at a 2009 Commonwealth of Virginia's Innovative Technology Symposium "several people confronted [it] and asked whether [it] and PTG were related . . . ." (*Id.* at ¶ 36.) Moreover, Plaintiff alleges that after PTG became a Microsoft Gold Certified Partner, the same partnership classification that Plaintiff holds, and on at least one occasion, Microsoft confused PTG for Plaintiff "in providing a reference for computer services to the Richmond Redevelopment Housing Authority." Plaintiff filed the instant lawsuit for trademark infringement and unfair competition under the Lanham Act and for a declaratory judgment on January 21, 2010, and seeks monetary, injunctive, and declaratory relief. Defendant PTG has not objected to the Court's exercise of personal jurisdiction over it and answered Plaintiff's Complaint on February 26, 2010. Defendant Casey objects to the Court's right to exercise personal jurisdiction over him and contends that the Complaint fails to set forth a cognizable claim and filed the pending Motion to Dismiss on February 26, 2010. Defendant's Motion to Dismiss has been fully briefed and is now ready for the Court's ruling.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). When a court addresses the question of jurisdiction based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a *prima facie* showing of a sufficient basis for jurisdiction. *Id.*; *see*

*also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005). In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *see also Dring v. Sullivan,* 423 F. Supp. 2d 540, 543 (D. Md. 2006). Since this Court has not conducted any evidentiary hearing, Plaintiff only has the burden to establish a *prima facie* basis for the Court to exercise personal jurisdiction over Defendant Casey.

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

## ANALYSIS

### I. Motion to Dismiss for Lack of Personal Jurisdiction

A district court's exercise of personal jurisdiction over a non-resident defendant must comply with the requirements of both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, this case involves Lanham Act claims giving this Court subject matter jurisdiction as a federal question, and thus "the dictates of due process derive from the Fifth Amendment," although the same principles apply. *Amhil Enter. LTD v. WAWA, Inc.*, Civ. A. No. HAR-93-1349, 1994 WL 750535, at *2 (D. Md. Dec. 16, 1994). As explained by the Court in *Amhil*, when "an action aris[es] under a federal question, the law of the forum state in which the federal court sits," in this case Maryland, "governs the Court's exercise of personal jurisdiction, unless a federal statute specifically authorizes otherwise." *Id.* As the Maryland Court of Appeals recently explained, "although the statutory and constitutional inquiry are not mutually exclusive," the analysis under these two grounds merge, as this Court has held that the "long-arm statute represents an effort by the Legislature to expand the boundaries of permissible *in personam jurisdiction* to the limit permitted by the Federal Constitution." *CSR, Ltd. v. Taylor*, 983 A.2d 492, 502 (Md. 2009) ("In other words, 'if to exercise . . . jurisdiction in a given case would violate Due Process, we construe our long-arm statute as not authorizing the exercise of personal jurisdiction over the defendant.'") (citation omitted). Nevertheless, the Court is reminded that it should not "simply dispense with analysis under the long-arm statute." *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 910 (D. Md. 2008) (citations omitted). Thus, if the Court finds that the exercise of personal jurisdiction is not constitutional, it

need not engage in an analysis of the application of the long-arm statute. Accordingly, the Court begins its discussion with an analysis of the constitutional requirements for exercising personal jurisdiction over Defendant Casey.

### A. Due Process Clause of the Fifth Amendment

States may exercise personal jurisdiction over an out-of-state defendant only if the defendant has established "minimum contacts" with the state, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Cernia Corp. v. Jarrad*, 203 F.3d 312, 317 (4th Cir. 2000) (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980)); *see also CSR, Ltd.*, 983 A.2d at 503. The critical issue in determining whether the defendant has established minimum contacts with the forum state is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) ("It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). Minimum contacts can give rise to either general jurisdiction, in which the cause of action does not relate to the contacts but the contacts are so "continuous and systematic" that jurisdiction is proper, or specific jurisdiction, where the cause of action arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984); *Burger King Corp.,* 471 U.S. at 472 (citation omitted). Given that neither party has asserted that Defendant's Casey's contacts in the State of Maryland are sufficiently continuous and systematic to justify general personal jurisdiction, the Court may only exercise personal jurisdiction over Casey if his contacts establish specific jurisdiction. In considering an assertion of specific personal jurisdiction, the Fourth Circuit has articulated the following three-part test: "(1) the extent to which the defendant purposefully availed itself of the

privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

This is not a mechanical test, but requires the court to look at the "quality and nature" of the contacts, and not to merely count the number of contacts. *Id.* (*quoting Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 238 (D. Md. 1992)). "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Carefirst of Md., Inc.*, 334 F.3d at 397 (citation omitted). Additionally, "it is not necessary that the defendant ever actually enter the forum state's territory; so long as the defendant has purposefully directed his activities toward the forum state, and the litigation arises from those activities, due process is satisfied." *CoStar Group, Inc. v. Loopnet, Inc.*, 106 F. Supp. 2d 780, 784 (D. Md. 2000) (citing *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414). Moreover, in determining whether the exercise of personal jurisdiction over the defendant is reasonable, courts look to factors such as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279.

As Plaintiff correctly asserts, and as recently reiterated by the Maryland Court of Appeals, although a corporate officer or agent is generally not liable for torts committed by the corporation, corporate officers or agents can be held liable for the torts that they "personally commit, or which [they] inspire or participate in, even though performed in the name" of the

7

corporation. *Allen v. Dackman*, 991 A.2d 1216, 1228 (Md. 2010). The court applied this same principal to limited liability companies. *Id.* at 1229. Plaintiff argues Defendant Casey's actions of participating in the selection of the infringing service name of Defendant PTG, directing PTG to provide competing computer services, controlling the service mark, and directing counsel for PTG to file a federal trademark registration all demonstrate Defendant's Casey's personal liability in this case. In fact, Plaintiff points to several cases in which courts have held that corporate officers are liable for trademark infringement without needing to pierce the corporate veil, where the corporate officer was the driving force behind the infringement. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F. Supp. 2d 145, 149 (4th Cir. 1987); *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1066 (E.D. Va. 2002). Although not explicitly alleged in Plaintiff's Complaint, the Court agrees with Defendant that Plaintiff essentially seeks to hold him liable for acts he performed in what Plaintiff believes to be his capacity as the Chief Executive Officer of PTG.[1]

However, as the Court explained in *Amhil*, "the potential for personal liability of a corporate officer, however, is no substitute for a determination of whether the Court may exercise personal jurisdiction over the officer." 1994 WL 750535, at *4. Both parties acknowledge that, "personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004) (citations omitted). Instead, "personal jurisdiction must be based on an

---

[1] Defendant contends that he is not an officer of PTG; instead, he asserts that he is the Chief Executive Officer of PGI, PTG's parent corporation. However, Plaintiff argues that Defendant Casey has held himself out as an officer of PTG in a business website article. The Court need not resolve this factual dispute to address the Motion to Dismiss because it finds that whether Casey performed his duties as an executive officer of PGI or PTG is irrelevant to the analysis of whether his personal participation in the alleged wrongdoing is sufficient for the Court to exercise personal jurisdiction over him.

8

individual's personal contacts with or purposeful availment of the forum state." *Id.* at 513-14 (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)). Defendant points the Court's attention to the Fourth Circuit's 1983 decision in *Columbia Briargate Co. v. First National Bank*, in which the Court held that when a suit is brought against a non-resident individual defendant based solely on his status as a corporate agent, then a court may not exercise personal jurisdiction over the individual defendant if the defendant's involvement in the tort occurred outside of the forum. *See* 713 F.2d 1052, 1064 (4th Cir. 1983). On the contrary, if the corporate agent committed the tort within the forum state, then the court can properly exercise personal jurisdiction over the non-resident defendant "*provided the long-arm statute of the forum state is co-extensive with the full reach of due process*." *Id.* at 1064-65 (emphasis in the original).

Although not explicitly argued by Plaintiff, the Court notes that in *Calder*, a case decided after *Columbia Briargate Co.*, the Supreme Court articulated the "effects test" in determining whether "a court may exercise personal jurisdiction over a non-resident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." *Carefirst of Md., Inc.*, 334 F.3d at 397-98. As the Fourth Circuit held in *Carefirst*:

> This "effects test" of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

334 F.3d at 398 n.7 (4th Cir. 2003) (citing *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 265-66 (3rd Cir.1998)). Further, "in order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant

expressly aimed its tortious conduct at the forum." *CoStar Group, Inc.*, 106 F. Supp. 2d at 785 (citing *IMO Indus. Inc.*, 155 F.3d at 265-66). Under an analysis of the "effects test," the Supreme Court in *Calder* held that the writers and editors of an alleged defamatory newspaper article about the plaintiff, who was a California resident, should have expected to be sued in a California court although they wrote the article in Florida for their employer, the National Enquirer, because their "actions were expressly aimed at California" and "they knew that the brunt of [the potentially devastating] injury would be felt by [the actress] in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Carefirst of Md., Inc.*, 334 F.3d at 397 (quoting *Calder*, 465 U.S. at 789-90). The Supreme Court explained, although defendants' contacts were "not to be judged according to their employer's activities there," the defendants' "status as employees [did] not somehow insulate them from [the reach of a California court's exercise of personal] jurisdiction" because they were "primary participants in an alleged wrongdoing intentionally directed at a California resident." *See Calder*, 465 U.S. at 790. As this Court recognized in *CoStar Group, Inc.*, several courts have exercised personal jurisdiction in intellectual property claims where a defendant's "infringement was intentional," thereby demonstrating that the defendant "expressly targeted" a resident of the forum state. 106 F. Supp. 2d at 786.

Thus, Defendant Casey must have been a primary participant in the alleged Lanham Act violations and must have intentionally targeted his actions at the forum state in order to satisfy the "effects test" and for this Court to exercise personal jurisdiction over him in this suit. The Court finds that in viewing the facts in the light most favorable to Plaintiff, the first two prongs of the "effects test" have been met. First, this Court, among others, considers trademark infringement as a claim that sounds in tort. *See Music Makers Holdings, LLC v. Sarro*, No.

RWT 09cv1836, 2010 WL 2807805, at *1 (D. Md. July 15, 2010); *ShoreGood Water Co. v. U.S. Bottling Co.*, Civil Action No. RDD-08-2470, 2009 WL 24161689, at *1 (D. Md. Aug. 10, 2009); *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 799-800 (M.D.N.C. 2009). In addition, Plaintiff alleges that it used its service name years before Defendant selected the service name for PTG, providing some evidence for inferring that Defendant Casey's trademark infringement was intentional. Moreover, for purposes of addressing Defendant's Motion to Dismiss, the Court must accept as true that Plaintiff will or has suffered the brunt of the effects of Defendant's trademark infringement within the State of Maryland where it has a principal place of business, especially because Defendant PTG's Maryland office is located less than five miles from Plaintiff's office. The Court is satisfied that Plaintiff has sufficiently established that Defendant's personal participation in what is arguably intentional trademark infringement, specifically his involvement in directing that PTG provide competing computer services in such close proximity to Plaintiff's office, raises an inference that Defendant Casey "expressly targeted" Plaintiff as a Maryland resident. Defendant's affidavit does not dispute his personal involvement in such activities. Additionally, the Court believes that the exercise of personal jurisdiction is reasonable given that the Defendant has not made any showing that litigating in this forum would present a burden to him and when considering Plaintiff's interest in litigating in the State where it is headquartered, as well as, the State of Maryland's interest in resolving disputes of its residents. Accordingly, the Court finds that the exercise of personal jurisdiction over Defendant Casey is proper under a due process analysis.[2]

---

[2] The Court need not pierce the corporate veil to exert personal jurisdiction over Defendant Casey because the fact that he allegedly committed intentional torts in his corporate capacity does not shield him from personal liability for those torts and because the Court has found personal jurisdiction proper in this forum as a result of his personal participation in the alleged wrongdoing directed at a Maryland resident.

### B. Maryland Long-Arm Statute

Plaintiff asserts that the relevant Maryland long-arm statute provision at issue is section 6-103(b)(3), which provides that "a court may exercise jurisdiction over a person, who directly or by an agent . . . "causes tortious injury in the State by an act or omission in the State." Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b) (West 2010). Furthermore, given that section 6-103 serves as the only basis for acquiring personal jurisdiction over Defendant Casey, he "may be sued only on a cause of action arising from any act enumerated in this section." *Id.* § 6-103(a). Plaintiff is not seeking to sue Defendant Casey for any claim other than his alleged violations of the Lanham Act, which represents the "tortious injury" Plaintiff alleges Defendant caused it to suffer. As this Court recently explained, "under section 6-103(b)(3), both the tortious conduct and injury must occur in Maryland. Traditionally, 'the tortious wrong of trademark infringement takes place in *either* the place where the infringer commits acts of infringement or in the place where customers are likely to be deceived and confused.'" *Music Makers Holdings, LLC*, 2010 WL 2807805, at *1 (internal citations omitted). Neither party specifically indicates where Defendant Casey engaged in the acts that constitute infringement, i.e. where he directed that PTG use the allegedly similar service name. However, the Court believes that the short distance between PTG and Plaintiff's Maryland office raises an inference that customers in the State of Maryland are likely to be deceived by the infringing trademark. Thus, the Court is satisfied that the exercise of personal jurisdiction over Defendant Casey satisfies the Maryland long-arm statute.

### I. Motion to Dismiss for Failure to State a Claim

Defendant argues that Plaintiff's Complaint failed to allege specific facts to hold him personally liable for trademark infringement. As Defendant Casey correctly recognized, the Court need not pierce the corporate veil to hold a corporate officer liable for his active

12

participation in trademark infringement. *Stafford Urgent Care*, *Inc.*, 224 F. Supp. 2d at 1065. As explained in *Stafford Urgent Care Inc.*, a corporate officer, who is a central figure in the corporation, can be found personally liable for "acts of trademark infringement that he had 'authorized and approved.'" *Id.* at 1066 (citing *Donsco Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978)). In *Stafford Urgent Care Inc.*, the court found the individual corporate defendants liable because they personally participated in incorporating the corporation under the allegedly infringing name "with intent and purpose of diverting" business from Plaintiff's facility. *Id.* at 1066. Contrary to Defendant's argument, Plaintiff's Complaint sufficiently pleads facts that demonstrate that Defendant Casey "authorized and approved" the infringing activity, namely that he participated in the selection of the service name for PTG, directed that PTG engage in a competing business industry less than five miles from Plaintiff's office, and directed that PTG's counsel file a trademark registration application. Accepting as true these factual allegations, the Court finds that Plaintiff's Complaint sufficiently demonstrates a plausible basis for holding Defendant Casey personally liable for trademark infringement. Therefore, the Court will deny Defendant's Motion to Dismiss.

## **CONCLUSION**

For the reasons articulated above, the Court DENIES Defendant Casey's Motion to Dismiss. A separate Order shall follow this Memorandum Opinion.


  September 2, 2010                                   /s/
         Date                             Alexander Williams, Jr.
                                          United States District Court Judge